**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>ROBERT KIMMELL,<br><br>　　　　　Defendant. | 3:14-cr-00054-RCJ-WGC<br><br>**ORDER** |

Defendant was indicted on charges of a felon in possession of firearms and possession of methamphetamine with intent to distribute. Pending before the Court are Defendant's Motion to Sever Count I of the Indictment (ECF No. 35) and his Motion to Suppress Evidence (ECF No. 36). The Government has responded and Defendant replied. For the reasons contained herein, the Motions are DENIED.

**I.   BACKGROUND**

On May 21, 2014, Defendant was being evicted from a residence in Reno, Nevada. The landlord called the local sheriff to serve the eviction notice and during the inspection of the premises pursuant to the notice, two guns were found in Defendant's bedroom: a Wilson combat pistol, .45 caliber, and a Caesar Guerini shotgun, 28 gauge. Based on other items present in the room, law enforcement identified Defendant by name and ran a check, discovering that he had previously been convicted of a felony. The guns were seized.

On May 30, 2014, law enforcement learned through a confidential informant ("CI") that Defendant was a convicted felon who was recently released from prison. The CI claimed that Defendant was storing methamphetamine and firearms in a storage unit located in Sparks, Nevada. Following up on this lead, the detective discovered that Defendant was renting a storage unit at a facility called Vista Park Self-Storage, located at 2845 Vista Boulevard in Sparks. The detective met with the facility managers who informed him that unit D6 had been rented by Defendant's stepfather in May 2004, but that on March 21, 2014, the rental of the unit had been transferred to Defendant. The detective requested a copy of the gate activity associated with unit D6 and discovered that Defendant had entered through the gate almost daily, sometimes spending a few minutes while other times remaining for hours.

On June 3, 2014, the detective contacted the Sparks Crime Suppression Unit and informed them of the information he had gathered. He requested that a canine unit be dispatched to sniff Defendant's storage unit. That same day, a canine unit was dispatched to the storage facility. The detective provided the canine officer with directions to have the police dog sniff a particular group of lockers, beginning with D4 and continuing to D9. The canine officer complied, and the police canine alerted on D6, the unit rented to Defendant. The detective then contacted the on-call deputy district attorney to obtain a search warrant.

The detective and the district attorney called the magistrate judge to obtain a search warrant. The detective described to the magistrate judge the basis for his belief that probable cause existed to belive that Defendant possessed and intended to distribute narcotics. The detective informed the magistrate that the CI had been arrested the week before and that he stated that Defendant was storing narcotics and firearms in a storage unit in Sparks. (Transcript 5:2–5, ECF No. 36-1). The detective indicated that he was able to find that storage unit and that on the

1  day of the warrant request, he "had a drug alerting K-9 do a random search on the storage unit.

2  The canine started at D4 and went to D9 and did a positive alert at Storage Unit D6 for a

3  controlled substance." (*Id.* at 5:6–8).

4        The detective informed the magistrate judge that he had received a readout of

5  Defendant's actions coming to and from the storage unit, which he found in his "experience and

6  training" to be consistent with narcotic activity. (*Id.* at 5:9–10). "He showed up at all different

7  times of the day. He would show up for five minutes sometimes and then leave which is unusual

8  for a storage unit. Other times, he would stay for a few hours and then leave and then come back

9  and then stay for a few minutes and then leave, all which is consistent with narcotics activity."

10  (*Id.* at 5:10–14). The detective then explained to the magistrate judge that the police dog that

11  conducted the narcotics sniff "is currently certified to California P.O.S.T." standards. (*Id.* at

12  5:15–16). The canine's credentials were then read into the record, supporting the detective's

13  representation.[1]

14        The magistrate judge then questioned the detective on the reliability of the CI and about

15  what information he specifically received from the CI regarding the kind of controlled

16  substances observed in the storage unit and an approximate quantity. (*Id.* at 6:11–13). The

17  detective explained that the CI indicated that Defendant "was an ounce to two-ounce dealer" and

18  that the CI told the detective that Defendant "lives on an address on Vassar in Reno but does not

---

[1] "Police Service Canine Remi, R E M I, is currently certified to California P.O.S.T. standards in the detection of drug odor with his handler, Reno Police Officer Jayson Hill. K-9 Remi has been annually certified since September of 2008 with his most recent certification he obtained on September 24th and 25th, 2013. K-9 Remi is certified and trained to detect the odors of five controlled substances: Methamphetamine, cocaine, (powder/rock), heroin, MDMA and marijuana. Officer Hill and K-9 Remi train monthly in each of the odors he is certified to detect. K-9 Remi has maintained an accuracy rate in excess of 80% during training. Ongoing training includes training in all areas of interdiction, such as vehicles, tractor/trailers, buses, trains, currency, parcels, luggage, storage units, industrial/professional buildings, residences, exterior/interior doors, schools, motels, etc. Training on various quantities of controlled substances, ranging from grams to multiple ounces; training on controlled negative (blank) testing, in which all objects or locations have no contraband present; extinction training, which proofs the dog and prevents him from alerting to common items associated with controlled substances, such as plastic bags, latex gloves, etc." (Transcript 5:19–6:9).

3

keep the narcotics located at his residence due to the fact that someone had kicked in his door and burglarized his residence." (*Id.* at 6:15–17). The detective related that the CI had informed him that Defendant "keeps all his narcotics at the storage unit" and that Defendant "is an ex-felon." (*Id.* at 6:17–18). The detective also told the magistrate judge that he had verified that Defendant's felon status was true and that Defendant was in "possession of firearms." (*Id.* at 6:18–19). The detective then stated that Defendant had last used the storage unit the night before. (*Id.* at 6:23–7:5).

Based on this information, the magistrate judge found probable cause for issuing the search warrant of the storage unit. (*Id.* at 7:24–8:1). The detective then executed the search warrant on unit D6 and found $1,500; 107.4 grams of methamphetamine; two sawed-off shotguns; a 17HMR pistol with scope; indicia in Defendant's name; packaging material; and paraphilia. The detective also found 45ACP ammunition, which matched the type of ammunition that was loaded into the Wilson combat pistol that was recovered from Defendant's room on May 21, 2014.

A four count indictment followed. The first count charged Defendant of being a felon in possession of firearms relating to the guns found on May 21, 2014. The remaining three counts were based on the evidence discovered in the storage unit, namely the firearms and narcotics. A superseding incitement was filed on May 20, 2015 that additionally charges Defendant with possession of psilocin, a Schedule II controlled substance, and marijuana with intent to distribute arising from evidence that was collected from Defendant's room on May 21, 2014. (*See* Superseding Indictment 2–3, ECF No. 43). The superseding incitement also claims that all the firearms were stolen. (*Id.*). Defendant now moves to have the first count of the indictment

1  severed from the remaining counts.  Defendant also moves to suppress all evidence obtained

2  from the storage unit for lack of probable cause in violation of the Fourth Amendment.

3  **II.     MOTION TO SEVER**

4      Defendant argues that Count 1 should be severed because it is unrelated to the other

5  counts such that Defendant would be prejudiced if he were forced to defend against all the counts

6  jointly.  The Court disagrees.  Federal Rule of Criminal Procedure 8(a) governs the joinder of

7  offenses and allows an incitement to charge a defendant with two or more offenses if the

8  offenses (1) are of the same or similar character, (2) based on the same act or transaction, or (3)

9  are connected with or constitute parts of a common scheme or plan.

10      The established rule in the Ninth Circuit "is that a valid basis for joinder should be

11  discernible from the face of the indictment." *United States v. Jawara*, 474 F.3d 565, 573 (9th Cir.

12  2006).  Rule 8 should be "broadly construed in favor of initial joinder" to serve the "substantial

13  public interest . . . [of] joint trials." *United States v. Friedman*, 445 F.2d 1076, 1082 (9th Cir.

14  1971).  And the test is whether joinder would be so prejudicial to the defendant that the trial

15  judge is compelled to exercise his discretion to sever. *United States v. Lewis*, 787 F.2d 1318,

16  1321 (9th Cir. 1986).  Indeed, "[t]he prejudice must [be] of such magnitude that the defendant's

17  right to a fair trial [would be] abridged." *Id.* (citing *United States v. DiCesare*, 765 F.2d 890, 898

18  (9th Cir. 1985)).  Defendant has not shown that he would be so prejudiced if Count 1 were not

19  severed.

20      Even if the Court considers only the original indictment and not the additional

21  information that is provided in the superseding indictment, it is clear that joinder of Count 1 is

22  proper in this case.  Count 1 is the same offense as is charged in Count 2, and as stated, "the use

23  of multicount indictments charging offenses of similar characters is a sanctioned practice."

24

*Howard v. United States*, 372 F.2d 294, 301 (9th Cir. 1967) (citing the language in Rule 8(a)). When determining whether separate counts are of the same or similar character, courts in the Ninth Circuit "consider factors such as the elements of the statutory offenses, the temporal proximity of the acts, the likelihood and extent of evidentiary overlap, the physical location of the acts, the modus operandi of the crimes, and the identity of the victims . . . ." *Jawara*, 474 F.3d at 578. "[T]he bottom line is that the similar character of the joined offenses should be ascertainable—either readily apparent or reasonably inferred—from the face of the indictment." *Id.*

In this case, the statutory elements of the offense are identical because the charges pursuant to both Count 1 and Count 2 of the original indictment are raised under 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[2] The temporal proximity of the acts also supports joinder. The first count is based on the events that transpired on May 21, 2014. The second count for felon in possession of firearms arises from the search of the storage unit, which occurred less than two weeks later. There is also the potential of evidentiary overlap. Although the scope of the overlap cannot be ascertained from the face of the indictment, it stands to reason that evidence obtained from the storage locker may be related to the firearms retrieved from Defendant's bedroom, such as the 45 ACP ammunition.

The physical location of the acts provides further indicia that joinder of Count 1 with the rest of the indictment is appropriate. While not obvious on the face of the indictment, it is clear that all acts in question here took place in Washoe County, Nevada, and Defendant does not contend otherwise. Finally, Defendant's status as a felon while maintaining possession of firearms is an element common to both counts and relevant to both charges. In short, finding

---

[2] The superseding indictment alleges violations of these same statutes under the corresponding counts for a felon in possession of firearms on May 21, 2014 and June 3, 2014.

1  that joinder is proper in this case does not required the Court "to engage in inferential gymnastics
2  or resort to implausible levels of abstraction to divine similarity." *Jawara*, 474 F.3d at 578; *see*
3  *also United States v. Rousseau*, 257 F.3d 925, 932 (9th Cir. 2001) (holding that two offenses
4  were "[c]learly" of "a same or similar character and therefore were joined properly" where
5  defendant was indicted with two separate counts of being a felon in possession of a firearm).

6  Moreover, the additional counts contained in the superseding indictment provides even
7  more support for a finding that Count 1 should not be severed. The superseding incitement adds
8  charges that on May 21, 2014 Defendant was not only in possession of firearms, but that those
9  firearms were stolen. (*See* Superseding Indictment 2–3). It also charges Defendant with
10 possessing certain controlled substances with the intent to distribute. (*Id.* at 3). Thus, not only is
11 joinder proper under a theory of "same or similar character," but also because the acts are
12 connected with a common scheme or plan. Fed. R. Crim. P. 8(a).

13 Here, the stolen firearms and the narcotics found in both locations—at Defendant's home
14 and at his storage unit—support the charges that Defendant was engaged in drug trafficking. *See*
15 *United States v. Anderson*, 642 F.2d 281, 284 (9th Cir. 1981) ("When the joined counts are
16 logically related, and there is a large area of overlapping proof, joinder is appropriate."). The
17 acts occurred within two weeks of one another and within close geographic proximity, and
18 therefore they could easily be considered part of a common scheme or plan. *See United States v.*
19 *Armstrong*, 621 F.2d 951, 954 (9th Cir. 1980) (refusing to sever where defendant had committed
20 three robberies, two on the same day and one a month before, all taking place in Sacramento by
21 finding a common scheme or plan). The Motion to Sever is denied.
22 ///
23 ///
24

III.     **MOTION TO SURPRESS**

Defendant argues that the drugs, firearms, and other evidence that was found in the storage unit should be suppressed because the detective failed to adequately establish probable cause and the magistrate judge erred in his finding of probable cause.  Again, the Court disagrees.  "For a search warrant to issue, the Fourth Amendment requires that there be 'probable cause, supported by Oath or affirmation.'" *United States v. Luong*, 470 F.3d 898, 902 (9th Cir. 2006) (quoting U.S. Const. Amend. IV).  "Probable cause exists when, under the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

In this case, there was clearly probable cause to support the issuance of the warrant.  The detective provided the magistrate judge with no less than three independent reasons why there was a "fair probability" that contraband would be found in unit D6 of the Vista Park Self-Storage facility.  First, the CI provided information that Defendant was a convicted felon who stored drugs and firearms in a storage unit in Sparks.  Based on this tip, the detective was able to corroborate that Defendant was in fact a recently released felon and that he did rent a storage unit in Sparks.  The information that was corroborated thus strengthened the probability that law enforcement would find narcotics and guns inside the storage unit. *See Gates*, 462 U.S. at 244 (stating that "[b]ecause an informant is right about some things, he is more probably right about other facts") (citation omitted).

Second, the detective obtained and reviewed the storage facility's entrance log and discovered that Defendant was entering the storage facility almost daily and staying for different intervals of time, sometimes only minutes, at other times for hours.  The detective, based on his experience and training, interpreted this behavior as consistent with drug dealing.  And although

the detective's opinion may not be evidence itself, it is a reasonable interpretation of the facts that were presented to the magistrate—namely, Defendant's regular and consistent visits to his storage unit.

And third, the police canine's alert on unit D6 provides additional support that there was a fair probability that drugs would be discovered within. The only unit on which the canine alerted was the one belonging to Defendant, and the magistrate judge was presented with the information he felt was necessary to determine whether the alert was reliable such that it helped establish probable cause. Therefore, based on a totality of the circumstances, the Court finds that the search warrant was issued pursuant to a proper finding of probable cause.

Defendant argues that any information the detective received from the CI should be discounted or discredited entirely because the detective failed to fully corroborate all pieces of information the CI provided. Specifically, Defendant argues that the CI was wholly incorrect regarding Defendant having ever lived on Vassar Street or that his home was ever burglarized. Defendant contends that had the detective followed up on this information, which he provided to the magistrate judge as part of the basis for the CI's reliability, the detective would have discovered the inaccuracy. At least, Defendant argues, the detective erred by recklessly presenting this information to the magistrate judge without first verifying its veracity. The Court is unconvinced.

In determining whether a confidential informant's tip may be used to assist in establishing probable cause the court considers the credibility of the informant and whether the informant's information "was bolstered by independent police investigation of the tip or corroboration by other confidential informants." *United States v. Martinez-Garcia*, 397 F.3d 1205, 1216 (9th Cir. 2005). Here, the detective engaged in corroborative efforts on at least some

of the information provided by the CI.  The detective verified that Defendant was in fact a convicted felon and that he did in fact rent a storage unit in Sparks.  Furthermore, Defendant was found in possession of firearms less than two weeks earlier, which further acted to corroborate the information provided by the CI.

The fact that the CI was wrong about Defendant living on Vassar Street or that his home had been broken into would be more troublesome if the CI's information was the sole basis for the magistrate judge's finding of probable cause.  However, the CI's tip was but one piece of the puzzle.  Besides the information provided by the CI, the detective also presented the magistrate judge with the facts about Defendant's frequent visits to the storage unit.  It may have been coincidence that Defendant in fact owned a storage unit in Sparks, but the fact that he also visited that unit on a daily basis, and sometimes for hours at a time, cannot be ignored.  Defendant contends that the detective's conclusion that his behavior was consistent with narcotics trafficking is unfounded, apparently since it is based on the detective's training and experience.  But even a lay person using nothing more than "common sense" could conclude that daily visits to a storage unit for differing intervals of time are suspicious in light of the CI's tip. *See Gates*, 462 U.S. at 244 (stating that making a probable cause determination requires a "practical, common-sense judgment").

Defendant further contends that no probable cause existed to issue the warrant because the magistrate judge was not provided additional information on the certification of the police canine that had alerted on Defendant's unit.  This argument is likewise unavailing.  "If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search." *Florida v. Harris*, 133 S. Ct. 1050, 1057 (2013).  There was no reason for the

magistrate judge to question the certification, qualification, or abilities of the dog that sniffed out Defendant's drugs. And the alert itself likely establishes independent probable cause upon which the warrant could have been based. *See id.*

All of this notwithstanding, Defendant requests that he be given a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to challenge the validity of the warrant. "A defendant is entitled to a hearing to determine the sufficiency of the affidavit supporting a search warrant if he or she makes a 'substantial preliminary showing that (1) the affidavit contains intentionally or recklessly false statements or misleading omissions, and (2) the affidavit cannot support a finding of probable cause without the allegedly false information.'" *Martinez-Garcia*, 397 F.3d at 1215 (quoting *United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000)); *see also Franks*, 438 U.S. at 171–72.

Defendant argues that the inaccurate information received from the CI and then transmitted to the magistrate judge by the detective regarding Defendant living on Vassar Street and the alleged burglary was recklessly made because the detective could have easily verified the information prior to requesting a warrant. However, even if Defendant is correct that these statements were recklessly made, he has not satisfied his burden of showing that the affidavit cannot support a finding of probable cause without this information. The affidavit includes not only the information given by the CI, but the results of the detective's own investigation as well as the alert on Defendant's storage unit by the police dog. There has not therefore been a substantial preliminary showing that the affidavit could not support probable cause without the allegedly false information.

Defendant also contends that a hearing should take place so that he can challenge the certification and abilities of the police canine and the canine officer. In support of this

contention, Defendant argues that the dog in this case was insufficiently trained in regards to searches conducted for methamphetamine inside storage units. (Mot. to Suppress 11, ECF No. 36). Defendant argues that the overwhelming training the dog received was conducted in open fields, vehicles, and office buildings, but not storage units, which Defendant asserts could lead to false alerts. However, Defendant has not pointed to any specific evidence to substantiate his claim that the dog was inadequately trained; rather, he rests his argument on the "face of the records that have been provided." (*Id.*). The Court finds this to be an insufficient reason to conduct an special evidentiary hearing on the matter, especially in light of the dog's actual certification to both alert on methamphetamine and to search storage units, (*see* Transcript 5:19–6:9). The Motion is denied.

## CONCLUSION

IT IS HEREBY ORDERED that Defendant's Motion to Sever (ECF No. 35) is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion to Suppress (ECF No. 36) is DENIED.

IT IS SO ORDERED.

Dated:  June 9, 2015

_____
ROBERT C. JONES
United States District Judge